UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

PETER BIRMINGHAM and
BIRMINGHAM SOFTHANDS INFIELD
TRAINER CO., INC.,

                    Plaintiffs,

            v.                                              Civil Action No.

RAWLINGS SPORTING GOODS CO., INC.,

                    Defendant.

---

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF ITS
## APPEAL OF THE RULING BY THE TRADEMARK TRIAL AND APPEAL BOARD
## TO CANCEL THE SOFTHANDS DESIGN MARK

Matthew Van Ryn, Esq.
Bar Roll No. 516272
MELVIN & MELVIN, PLLC
217 S. Salina St., 7th Floor
Syracuse, NY 13202
Phone: (315) 422-1311
Fax:  (315) 479-7612

Attorneys for Plaintiffs
Peter Birmingham and
Birmingham Softhands Infield
Trainer Co., Inc.

# TABLE OF CONTENTS

Table of Contents ............................................................................. i

Table of Authorities ......................................................................... ii

I.      Preliminary Statement ............................................................. 1

II.     Relief Sought ........................................................................... 2

III.    Standard of Review of Trademark Trial & Appeal Board Rulings ............... 3

        A. New Action Should Be Reviewed *De Novo* .................................... 3

        B. TTAB's Ruling to be Reviewed Under "Thorough Conviction" / "Substantial
           Evidence" Standard ............................................................. 3

        C. TTAB Over-Relied on Factually Incorrect Affidavit to Reach Findings of
           Fact Underlying Decision ...................................................... 5

IV.     Trademark Cancellation Ruling Failed to Meet Summary Judgment Standard ..... 7

        A. Genuine Issues of Material Fact Remain ...................................... 8

        B. TTAB Incorrectly Limited its Review Only to 1st Morton –Norwich Factor ... 8

        C. TTAB Decision Failed to Meet Both Finding of Fact and Summary Judgment
           Standards and Must Be Reversed ............................................... 9

V.      Analysis of When a Design Mark is "Functional" Under Lanham Act and
        Applicable Case Law ................................................................ 9

VI.     Even if the Design Mark Cancellation is Upheld, Plaintiffs Retain Valid Causes
        of Action Against Rawlings Under Section 43(a) of the Lanham Act ............. 13

VII.    Causes of Action Under the Common Law and Statutes of New York .......... 16

VIII.   Conclusion ........................................................................... 20

## **TABLE OF AUTHORITIES**

### **Cases:**

*Allied Maintenance Corp. v. Allied Mech. Trades,* 42 N.Y.2d 538, 399 N.Y.S.2d 628 (1977) ...   17

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ....   7

*Best Lock Corp. v. Schlage Lock Co.,* 413 F.2d 1195 (C.C.P.A. 1969) ...........................   13

*Beverage Marketing USA, Inc. v. South Beach Beverage Co., Inc.,* 20 A.D.3d 439, 799 N.Y.S.2d
242, (N.Y.A.D. 2d Dept., 2005) ...............................................................   17

*Brown v. Henderson,* 257 F.3d 246, 251 (2d Cir. 2001) ................................   7

*Bonito Boats, Inc. v. Thunder Craft Boats, Inc.,* 489 U.S. 141, 157 (1989) .......................   14

*Cartier, Inc. v. Four Star Jewelry Creations, Inc.,* 348 F.Supp.21d 217, 240 (S.D.N.Y. 2004)...   21

*Cartier, Inc. v. Samo's Sons, Inc.,* 2005 WL 2560382 (S.D.N.Y. 2005) ..........................   21

*Cartier, Inc. v. Sardell Jewelry, Inc.* 2008 WL 4206330 (2d Cir. 2008) .........................   21

*Chandon Champagne Corp. v. San Marino Wine Corp.,* 335 F.2d 531, 535, 142 U.S.P.Q. 239,
239 (2nd Cir., N.Y., 1964) .....................................................................   3

*Dickinson v. Zurko,* 527 U.S. 150, 119 S.Ct. 1816, 50 U.S.P.Q.2d 1930 (1999) ...............   4

*Everything Baseball v. Wilson Sporting Goods Co. et al,* 611 F.Supp.2d 832 (N.D.Ill., 2009) ..   19

*Farrago v. Rawlings Sporting Goods Co., Inc.,* 2008 WL 880178, (E.D.Mo., 2008) ............   19

*Fibermark, Inc. v. Brownville Specialty Paper Prods., Inc.* 2005 WL 1173562 (N.D.N.Y.,
2005) .........................................................................................   15

*Garrity v. Lyle Stuart, Inc.,* 40 N.Y.2d 354, 358, 386 N.Y.S.2d 831, 353 N.E.2d 793 (1976) ..   19

*Gasoline Heaven at Commack, Inc. v. Nesconsett Gas Heaven, Inc.,* 191 Misc.2d 646, 743
N.Y.S.2d 825 (Sup.Ct. Suffolk County, 2002) ...............................................   17

*Gallina v. Giacalon,* 171 Misc.2d 645, 648, 655 N.Y.S.2d 317 (1997) ..........................   18

*Georgia-Pacific Consumer Products, LP v. Kimberly-Clark Corp.,* 2011 WL 3200702
(C.A.7 Ill.) ....................................................................................   6

*Globe-Union, Inc., v. Chicago Telephone Supply Co.,* 103 F.2d 722 (7 Cir., 1939) .............   3

*Goya Foods, Inc. v. Tropicana Products, Inc.* 846 F.2d 848, 853 (2nd Cir., N.Y., 1988) .......   3

*Hubbell Inc. v. Leviton Manufacturing Co., Inc,* 1997 WL 1068671 (E.D.N.Y.) ...............   14, 16

*In re Howard Light Industries, LLC,* 2006 WL 1968605, 80 U.S.P.Q.2d 1507 (TTAB 2006) ..   12, 13

*In re Morton-Norwich Products, Inc.,* 671 F.2d. 1332 (1982) ................................8-11, 16, 21

*Inwood Laboratories, Inc. v. Ives laboratories, Inc.,* 456 U.S. 844 (1982) .......................   8

*Keystone Manufacturing Co., Inc. v. Jaccard Corp.* 2007 WL 655758 (W.D.N.Y.) .............   15

*Knitwaves, Inc. v. Lollytogs, Ltd.* 71 F.3d 996, 1008 (2nd Cir. 1998) .............................   15

*Landscape Forms, Inc. v. Columbia Cascade Co.,* 113 F.3d 373, 377 (2nd Cir. 1997) ............. 15

*Matrix Group Ltd., Inc. v. Rawlings Sporting Goods Co., Inc.,* 477 F.3d 583, (C.A.8,
Mo., 2007)  ................................................................................................. 19

*Morgan v. Daniels*, 153 U.S. 120, 125, 14 S.Ct. 772, 773, 38 L.Ed. 657 (1894) ................. 4

*National Communications Ass'n, Inc. v. American Tel. and Tel. Co.,* 46 F.3d 220, 222
(2nd Cir., N.Y. 1995) ................................................................................... 3

*P3 International v. Weitech, Inc.,* 1999 WL 1020249 (S.D.N.Y.) ............................... 12, 15

*Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.* 469 U.S. 189, 198 (1985) ........................... 14

*Prozeralik v. Capital Cities Communications, Inc.,* 82 N.Y.2d 466, 479, 605 N.Y.S.2d 218,
626 N.E.2d 34 (1993) ................................................................................... 18

*Qualitex Co. v. Jacobson Products Co., Inc.,* 514 U.S. 159, 115 S.Ct. 1300 (1995) ............. 9

*Rocanova v. Equitable Life Assurance Society,* 83 NY.2d 603, 634 N.E.2d 940, 612 N.Y.S.2d
339 (1994) ................................................................................................. 19

*Samara Brothers, Inc. v. Wal-Mart Stores, Inc.,* 165 F.2d 120, 125 (2nd Cir. 1998) ............. 15

*Sears Roebuck & Co. v. Stiffel Co.,* 376 U.S. 661 (1964) ........................................... 14

*Stern Apparel Corp. v. Raingard, Inc.,* 87 F.Supp. 621 (D.C.N.Y., 1949) ........................ 3

*Spytown.com, Inc. v. Queens Spy Shop*, 29 Misc.3d 1205, 2010 WL 3835616 .................. 17

*Swersky v. Dreyer and Traub*, 219 A.D.2d 321, 328, 643 N.Y.S.2d 33, 38 (N.Y.A.D.
1 Dept., 1996) ............................................................................................ 18

*T.F. Enterprises Inc. v. Nina Ricci, S.A.R. L.,* 523 F. Supp. 1147 (S.D.N.Y. 1981) ............. 4

*Tone Bros., Inc. v. Sysco Corp.* 28 F.3d 1192, 1206 (Fed. Cir. 1994) ............................ 15

*TrafFix Devices, Inc. v. Marketing Displays, Inc.* 523 U.S. 23, 121 S.Ct. 1255 (2001) ... 6, 9, 11, 12, 16

*Two Pesos v. Taco Cabana*, 505 U.S. 763 (1992) ................................................... 14, 16

*Valu Engineering, Inc. v. Rexnord Corp.,* 278 F.3d 1268 (2002) ................................. 9-11

*Wilson Jones Co. v. Gilbert & Bennett Mfg. Co.,* 332 F.2d 216 (2nd Cir. 1964) ................. 4

**Statutes**

Fed.R.Civ.P. 56 (c) ...................................................................................... 7

The Lanham Act, 15 U.S.C. § 1051, *et seq.* ........................................... 2, 3, 5, 6, 13-16, 26

**Other Authorities**

*McCarthy on Trademarks and Unfair Competition*, (4th Ed. 2006) ............................. 4, 13

*Prosser and Keeton, Torts,* (5th ed.) ................................................................. 18

Restatement (Second) of Torts, ....................................................................... 18

## I.     PRELIMINARY STATEMENT

This case is an appeal of the ruling of the United States Patent & Trademark Office's Trademark Trial and Appeal Board (the "TTAB") to cancel the design mark of Plaintiffs Peter Birmingham and the Birmingham Softhands Infield Trainer Co., Inc. for an infield training device known as "Softhands®." The Softhands® product has been sold continuously in interstate commerce for over 27 years, and was the first commercially successful infield training device of its type. Its inventor, Peter Birmingham, is a retired teacher who has been coaching baseball for over 30 years, and continues to coach to this day. The Softhands® product is widely known, and has been endorsed by some of the most prominent coaches and players in baseball.

Defendant Rawlings Sporting Goods Co., Inc. created a duplicate of the Softhands® product, and began selling it in the summer of 2009. Upon discovering the introduction of the counterfeit copy of his product, which Rawlings was manufacturing in Asia and began selling for about half the price of Mr. Birmingham's product, Mr. Birmingham sent a cease & desist letter to Rawlings. Rawlings' response was to file a petition with the Patent & Trademark Office (the "PTO") to cancel the mark.

Although the parties submitted the proceeding to the TTAB on an expedited basis with limited discovery, the TTAB still required nearly two years to render its decision, during which time Rawlings' less expensive copy of the Softhands® product, sold under the confusing similar name "Quick Hands", overwhelmed Mr. Birmingham's product in the market place, and has driven his business to the brink of extinction. This action is an appeal of the TTAB cancellation ruling, and simultaneously serves as a complaint against Rawlings for trademark infringement, as permitted under Section 21 of the Lanham Act (15 U.S.C. § 1071).

1

## II.    RELIEF SOUGHT

Plaintiffs Peter Birmingham and Birmingham Softhands Infield Trainer Co., Inc. hereby submit this memorandum of law in support of their appeal of the ruling of the United States Patent and Trademark Office's Trademark Trial and Appeal Board (the "TTAB") to cancel the Design Mark (defined below) of Plaintiff Peter Birmingham in response to the petition for cancellation filed by Rawlings Sporting Goods Company, Inc. (hereinafter, "Rawlings"). Plaintiffs seek a reversal of the TTAB's finding that said Design Mark is *de jure* "functional", and therefore not entitled to trademark protection, pursuant to Lanham Act § 2 (e)(5).  15 U.S.C. § 1052 (e)(5).

Plaintiffs appeal on the grounds that (a) there were material facts in dispute, rendering the TTAB's decision inappropriate on a motion for summary judgment because Rawlings failed to meet the requisite burden of proof; (b) the TTAB relied on demonstrably false and inaccurate statements made by Rawlings in support of their petition that the Design Mark – the exterior shape of a baseball training device – "is essential to the use or purpose of the article or it affects the cost or quality of the article," in reaching their decision to cancel the Design Mark.

As a result of these errors of law and fact by the TTAB, their decision to cancel the Design Mark should be reversed, and Plaintiffs' action against Rawlings for trademark infringement, false designation of origin, unfair competition and additional violations of the Lanham Act and the statutes and common law of the State of New York should be allowed to proceed before this Court.  This matter is before this court pursuant to the provisions of section 21 of the Lanham Act, which permits appeals to a TTAB cancellation proceeding to a District Court having jurisdiction over the parties.  15 U.S.C. § 1071 (a)(1).

### III.   STANDARD OF REVIEW OF TRADEMARK TRIAL & APPEAL BOARD RULINGS

### A.   NEW ACTION SHOULD BE REVIEWED *DE NOVO*

Section 21 of the Lanham Act provides that a "party to a cancellation proceeding … who is dissatisfied with the decision of the [TTAB] may appeal" the decision.  Such appeal may take the form of a civil action commenced in any federal District Court having jurisdiction within sixty (60) days of the rendering of decision of the TTAB.  15 U.S.C.A. § 1071(a), (b)

It is well settled law that a District Court's review of a TTAB decision amounts to a trial *de novo*, with the parties being permitted to introduce new evidence and testimony, including new issues, which were not brought before the TTAB in the original matter.  See, e.g., *Stern Apparel Corp. v. Raingard, Inc.,* 87 F.Supp. 621 (D.C.N.Y., 1949): "This suit is not an appeal from the Commissioner's decision; it is a trial *de novo* and all competent evidence, old and new, is admissible." Id., at p. 624, citing *Globe-Union, Inc., v. Chicago Telephone Supply Co.,* 103 F.2d 722 (7 Cir., 1939).  This rule continues to be followed in this District.  See, e.g., *Chandon Champagne Corp. v. San Marino Wine Corp.,* 335 F.2d 531, 535, 142 U.S.P.Q. 239, 239 (2nd Cir., N.Y., 1964), *Goya Foods, Inc. v. Tropicana Products, Inc.* 846 F.2d 848, 853 (2nd Cir., N.Y., 1988) ("[T]he proceeding is virtually *de novo*...") and *National Communications Ass'n, Inc. v. American Tel. and Tel. Co.,* 46 F.3d 220, 222 (2nd Cir., N.Y. 1995) ( "the standard of review is essentially *de novo.* ").

### B.   TTAB'S RULING TO BE REVIEWED UNDER "THOROUGH CONVICTION" / "SUBSTANTIAL EVIDENCE" STANDARD

In addition to the right of the parties to introduce new evidence in a proceeding appealing a TTAB decision in a District Court, the factual findings of the TTAB in the cancellation proceeding are to be given due deference, but are not strictly controlling in the subsequent

3

action.  Such factual findings from the TTAB proceeding are to be viewed under the well-established standard that they are controlling "unless the contrary is established by testimony which in character and amount carries thorough conviction".  *Morgan v. Daniels*, 153 U.S. 120, 125, 14 S.Ct. 772, 773, 38 L.Ed. 657 (1894); *accord Wilson Jones Co. v. Gilbert & Bennett Mfg. Co.,* 332 F.2d 216 (2nd Cir. 1964); *T.F. Enterprises Inc. v. Nina Ricci, S.A.R. L.*, 523 F. Supp. 1147 (S.D.N.Y. 1981) (reversal of TTAB on "thorough conviction" rule).

Professor McCarthy describes this "thorough conviction" standard of review as replacing the old "clearly erroneous" standard of review of findings of fact of the TTAB.  3 McCarthy on Trademarks and Unfair Competition § 21:22.50 (4th Ed.)  The application of the "thorough conviction" standard of review was restated by the United States Supreme Court in 1999 in *Dickinson v. Zurko*, 527 U.S. 150, 119 S.Ct. 1816, 50 U.S.P.Q.2d 1930 (1999).  In its decision in *Dickinson*, the Supreme Court updated the traditional "thorough conviction" test described by Professor McCarthy with what it called a "substantial evidence" test.  The standard to be applied in evaluating TTAB findings of fact is for the District Court to ask the following question: "This Court has described the … standard as requiring a court to ask whether a 'reasonable mind might accept' a particular evidentiary record as 'adequate to support a conclusion.'" Id., 527 U.S. at 162.

Thus, this Court may review *de novo* the factual findings of the TTAB to determine whether a reasonable person would accept that the evidentiary record of the TTAB proceeding was adequate to support the conclusions reached by the Board in that proceeding on summary judgment, taking into account any additional relevant evidence that the parties may subsequently introduce on appeal in the District Court action.

**C.     THE TTAB'S RULING THAT THE DESIGN MARK IS FUNCTIONAL IS UNSUPPORTED BY SUBSTANTIAL EVIDENCE CARRYING THOROUGH CONVICTION**

Section 2(e)(5) of the Lanham Act provides:

"No trademark by which the goods of the applicant may be distinguished from the goods of others shall be refused registration on the principal register on account of its nature unless it --

(e) Consists of a mark which ... (5) comprises any matter that, *as a whole*, is functional." - 15 U.S.C. § 1052 (e)

In reaching its determination that the Design Mark should be cancelled because it is "functional" for purposes of Lanham Act § 2(e)(5), the TTAB relied heavily on the following factually incorrect statements from Rawlings' product category manager Ryan Farrar.  Mr. Farrar was responsible for the design and production of the Quick Hands infield trainer, Rawlings' knock-off of the Softhands® product. Errors of material fact from Mr. Farrar's affidavit (hereinafter, the "Rawlings Affidavit") relied on by the TTAB in reaching their decision include:

(a)     That the product would be more expensive to manufacture if it were made in a different shape;

(b)     That the price differential between the foam Softhands® product and competitive products made from leather is attributable to the *shape* of the training device, and not to the fact that it is made from less expensive foam and elastic bands rather than leather;

(c)     That if the product were square or rectangular, it would extend beyond the outer profile of a baseball glove, and therefore fail in its purpose;

(d)     That the product is made from a single piece of foam, rather than two pieces of foam that are glued together, showing a fundamental lack of familiarity with the product about which Mr. Farrar is testifying;

(e)     That the goal of the training device is "to stop only balls *in the air* that would be stopped by a player's glove", whereas the purpose of the product is to teach players to trap *ground balls* in the palm or heel of the hand, which corresponds to the *pocket* of the glove, not the entire glove; and

(f)     That the shape of the Softhands® product is required by Rawlings in order to make a competitive product.  The fact that there are numerous other competing

products in the market that do not copy Mr. Birmingham's Design Mark undermines this assertion.

- (a), (b), (c), (e) and (f) - TTAB Decision, pp. 6-7; (d) Rawlings Affidavit, ¶ 8.

For a discussion of why these statements are in error, and why these errors led the TTAB to a decision that is unsupported by "substantial evidence" carrying "thorough conviction", kindly refer to the Complaint, ¶¶ 17 – 38.

To summarize that section of the Complaint, Plaintiffs argue that the TTAB made a cursory analysis of Mr. Birmingham's Utility Patent, reviewed the Rawlings Affidavit's assertions without a critical eye, and based its ruling on the fact that a triangular shape was *mentioned* several times in the Utility Patent, and never looked beyond the surface to inquire *why* the triangular shape is supposedly *de jure* functional for purposes of the Lanham Act; that is, what specific "utility" and functional advantage the triangular shape provides that other shapes do not. *Cf. Georgia-Pacific Consumer ProductsLP v. Kimberly-Clark Corp.*, 2011 WL 3200702 (C.A.7 Ill.) (quilted diamond design on toilet paper was described in utility patent as improving softness, bulk, reduced nesting and ridges of how the toilet paper performed, touting utilitarian advantages of claimed design); *TrafFix Devices, Inc. v. Marketing Displays, Inc.* 523 U.S. 23, 121 S.Ct. 1255 (2001) (the central advance of the expired utility patent was the dual-spring design, and the dual-spring design is the essential feature of the trade dress for which protection was sought). Id., at p. 30.

Any shape of foam pad can be manufactured in a size that covers the hand.  Any foam pad will be less expensive to make than a leather glove.  If a training device was manufactured in a square or rectangular shape, that does not mean that it would necessarily be bigger (or smaller) than a baseball glove, as Mr. Farrar asserts in Rawlings' Affidavit. Softhands® competitors have

been on the market for several years.  None of them required the *precise shape* of a Softhands® in order to compete in the marketplace.

One of these competitors, Muhl Tech, makes a product called the "Playmaker Glove Insert" that is an oval shaped leather disk that a player can insert into the pocket of a regular baseball glove to get the same effect as a Softhands®.  This glove insert competes on price with the Softhands® trainer, as well as the Rawlings imitation.  Rawlings could have manufactured a competing training device using the same materials as Mr. Birmingham, but in a slightly different shape, and Mr. Birmingham would have no basis to complain; they did not need to make an *exact duplicate* of his product in order to compete effectively in the marketplace.

## IV.    TTAB'S RULING FAILED TO MEET SUMMARY JUDGMENT STANDARD

The TTAB rendered their decision to cancel Plaintiffs' Design Mark on a motion for summary judgment by Defendant.  Summary judgment is appropriate only when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is **no genuine issue as to any material fact** and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).  An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).*  A fact is material if it "might affect the outcome of the suit under the governing law." *Id.*  On a motion for summary judgment, courts must "**resolve all ambiguities, and credit all factual inferences** that could rationally be drawn, **in favor of the party opposing summary judgment.**" *Brown v. Henderson, 257 F.3d 246, 251 (2d Cir. 2001).* The party moving for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact.

### A.   GENUINE ISSUES OF MATERIAL FACT REMAIN

In the TTAB Cancellation proceeding, there were numerous material facts in issue,

making the TTAB's decision to cancel the Design Mark on Summary Judgment legal error.

Among those facts in issue were the following:

(a)   Whether the triangle shape of the device has any *de jure* functional utility stated in the Utility Patent - that is, does it actually perform better than other products *because* of its shape;

(b)   Whether the *actual* functionality of the device is instead contained in the nature of the foam padding, the amount of resiliency it has, which offers limited residency time for the player to entrap the ball on its surface; and in the placement of elastic straps for the fingers, forming a vertical axis through the middle of the pad that permits the ball to be entrapped in only the portion of the pad that is supported by the hand (i.e. the palm or heel of the hand);

(c)   Whether the *shape* of the device is necessary for others to employ in order to compete in the relevant market; and

(d)   Whether the remaining *Morton-Norwich* factors support a finding of *de jure* functionality sufficient to invalidate the Design Mark.

### B.   THE TTAB IMPROPERLY LIMITED ITS REVIEW ONLY TO THE FIRST ELEMENT OF THE MORTON-NORWICH TEST

The TTAB ruled to cancel the Design Mark exclusively on the basis of the first of the

four factors of the *Morton-Norwich* test of functionality: "the existence of a utility patent that

*discloses the utilitarian advantage* of the design sought to be registered". *In re Morton-Norwich*

*Products, Inc.*, 671 F.2d. 1332 (1982), at 1340-41.

The TTAB recited the *Inwood* formulation of the functionality test, which it described as

the "traditional rule" of functionality.  TTAB Decision, p. 10, citing *Inwood Laboratories, Inc. v.*

*Ives laboratories, Inc.*, 456 U.S. 844 (1982).  The TTAB discusses the *Inwood* standard, and then

states that "based on all of the evidence of record (especially the existence of a utility patent

covering the product design) that the product design is functional ... the asserted existence of

alternative designs does not suffice to overcome that determination that the product design is functional." TTAB Decision, at p. 11.

### C.    TTAB OVER-RELIED ON FACTUALLY INCORRECT AFFIDAVIT FROM RAWLINGS TO REACH DECISION

Plaintiffs contend that the mere mention in the Utility Patent of the triangular shape as the "preferred embodiment" of the invention, without discussing specific reasons *why* that shape functions better, is insufficient to meet the burden of summary judgment in cancelling the Design Mark, especially in light of numerous factual errors in the Affidavit of Ryan Farrar of Rawlings, and of facts in dispute raised by Plaintiffs in the TTAB cancellation proceeding, which were not given their proper consideration.

Plaintiffs submit that it was clear error for the TTAB to cancel the Design Mark *on summary judgment* in light of the foregoing errors of fact upon which they relied in reaching its decision, along with the facts in dispute that were not resolved in a light most favorable to the non-movant, as discussed *supra*.

### V.    ANALYSIS OF WHEN A DESIGN MARK IS "FUNCTIONAL" UNDER THE LANHAM ACT AND APPLICABLE CASE LAW

In reaching its ruling, the TTAB applied the traditional rules of functionality, as expressed in the line of cases derived from *In re Morton-Norwich Products, Inc., supra*, including *TrafFix Devices, supra; Qualitex Co. v. Jacobson Products Co., Inc.*, 514 U.S. 159, 115 S.Ct. 1300 (1995); and *Valu Engineering, Inc. v. Rexnord Corp.*, 278 F.3d 1268 (2002).

In *Morton-Norwich*, the TTAB had ruled that the shape of the bottle used in a series of household cleaning products all manufactured by the same company, including Fantastik, Glass Plus, Spray 'N Wash and Grease Relief were "no more than a non-distinctive purely functional container for the goods … essentially utilitarian and non-arbitrary." Id., 671 F.2d 1332, 1335.

The Court reviewed the manner in which the TTAB had reviewed the Morton-Norwich design

mark application for its bottle shape, and observed:

> "In the first place, a molded plastic bottle can have an infinite variety of forms or designs
> and still function to hold liquid. No one form is necessary or appears to be 'superior'.
> Many bottles have necks, to be grasped for pouring or holding, and the necks likewise
> can be in a variety of forms.  The PTO has not produced one iota of evidence to show the
> shape of appellant's bottle was *required to be as it is for any de facto functional reason,*
> which might lead to an affirmative determination of de jure functionality.  The evidence,
> consisting of competitor's molded plastic bottles for similar products, demonstrates that
> *the same functions can be performed by a variety of other shapes with no sacrifice of any*
> *functional advantage.*  There is no necessity to copy appellant's trade dress to enjoy any
> of the functions of a spray-top container." Id., at p. 1342.

The *Morton-Norwich* Court went on to observe "that we must strike the balance between

the 'right to copy' and the right to protect one's method of trade identification" Id., at p. 1340

(internal citations omitted).

*Valu Engineering*, also cited in the TTAB's decision, describes the distinction between

*de jure* and *de facto* functionality of a feature of a product for which trade dress protection is

sought:

> "Our decisions distinguish *de facto* functional features, which may be entitled to
> trademark protection, from *de jure* functional features, which are not. 'In essence, *de*
> *facto* functional means that the design of any product has a function, i.e., a bottle of any
> design holds fluid. *De facto* functionality does not necessarily defeat registrability.
> (citing *Morton-Norwich* at p. 1337) 'A design that is *de facto* functional, i.e. "functional"
> in the lay sense ... *may* be legally recognized as an indication of source. ***De jure***
> **functionality means that the product has a particular shape 'because it works**
> **better in this shape.'** (internal citations omitted)."  *Valu Engineering,* 278 F.3d at 1274.

In our case, the TTAB incorrectly ruled that the shape of the Softhands® product is *de*

*jure* functional, and therefore incapable of obtaining trademark protection or indicating source

of goods, simply because the shape of the product was *mentioned* in the Utility Patent.  That

means that the TTAB found that the *shape* of the Softhands® product either (a) works better than

other shapes, or (b) was more cost effective to manufacture, as a matter of law. Plaintiffs vigorously dispute this notion.

As in *Morton-Norwich*, there is no evidence that the product was *required* to be the shape it is in order to function. The shape of the product is *de facto* functional (i.e. its stops a baseball), but there is no specific utility attributable solely and uniquely to the shape. The shape of the Softhands® product would not appear to be the *purpose* of the invention, as was the case in *TrafFix*, and rather appears to be an arbitrary design decision on the part of the inventor, Mr. Birmingham.

*Valu Engineering* states the test that was applied in our case by the TTAB:

"[A] product feature is functional if it is **essential to the use or purpose** of the article *or* if it **affects the cost or quality** of the article." Id., at p. 1275-1276.

Neither is true of the Softhands® product – infield training devices are currently manufactured in a variety of shapes and still function well (see Complaint at ¶¶ 35-36), and the cost of manufacturing an infield training device is dependent on the *choice of materials,* not the shape of the product. See Rawlings Affidavit at ¶ 8:

"These alternative types of aids are also significantly more expensive because ***they use more materials and more expensive materials*** (e.g. leather or simulated leather). They also are more complex to make because they have several different pieces that must be joined together. **The Softhands training aid is relatively inexpensive because it requires one piece of foam [sic] with finger loops attached to the back.**"

Note that Rawlings' product manager makes no mention of the cost to produce a Softhands® being related in any way to its shape. Thus, the TTAB erred in its interpretation of both prongs of the "traditional" *Inwood* formulation of feature functionality. Only if one of the two prongs of the *Inwood* test are met may the fact finder dismiss the other elements of the *Morton-Norwich* analysis of functionality, as the TTAB did in this case.

11

The *TrafFix* Court observed that

"the dual-spring design [of the sidewalk sign that was the subject of the case] is not an arbitrary flourish in the configuration of MDI's product; **it is the reason the device works**. ... In the case where a manufacturer seeks to protect arbitrary, incidental, or ornamental aspects or features of a product found in the patent claims, **such as arbitrary curves** in the legs or an ornamental pattern painted on the springs, a different result might obtain. There the manufacturer could perhaps prove that those aspects do not serve a purpose within the terms of the utility patent." *TrafFix,* 532 U.S. at 33-34.

See also, *P3 International v. Weitech, Inc.*, 1999 WL 1020249 (S.D.N.Y.), at * 4: "the existence of a valid patent *disclosing the utilitarian purposes* of the configuration is strong ... evidence of the functionality of the configuration." The issue is whether the Birmingham Utility Patent discloses utilitarian purposes for the *shape* of the device that can only be achieved using that precise shape. The answer, of course, is "no". The only utility attributed specifically to the rounded triangular shape of the training device was that it covers the hand and stops the ball. *Any* shaped device of sufficient size and resiliency could accomplish this aim, and in fact many competing products are on the market today that saw no need to infringe the distinctive Softhands® shape in order to be successful. See Complaint, ¶ 35-36 for numerous examples.

Returning to our case, the Birmingham Utility Patent specifically notes that "While this invention has been described in detail with respect to a single preferred embodiment, it should be recognized that the invention is not limited to that embodiment, and that many modifications and variations thereon could be carried out by those of skill in the art..." Birmingham Utility Patent, Column 4, lines 4-8. So the Utility Patent itself recognizes that the purpose of the invention could be accomplished in other embodiments (i.e. other shapes) of the product apart from the drawing used to illustrate the invention.

In the TTAB decision, *In re Howard Leight Industries, LLC,* 2006 WL 1968605, 80 U.S.P.Q.2d 1507 (TTAB 2006), the Board examined a case where trade dress protection was

sought for the shape of an earplug for noise protection, the functionality of which was described

at length in a utility patent filing for the same product.  In the decision, the TTAB refers to

Professor McCarthy on Trademarks:

> "Prior case law cautions that **a utility patent must be examined in detail** to determine whether the disclosed configuration is **really primarily functional or is just a non-functional shape** that happens to be described or pictured as an incidental detail in a patent disclosure" J. Thomas McCarthy, <u>McCarthy on Trademarks and Unfair Competition</u>, § 7:89 (4th Ed. 2006).  Similarly, McCarthy notes at § 7:89.1, … "[a] patent may not be evidence of functionality in regard to things of a 'purely arbitrary' or 'mere design' nature which **happen to be disclosed in the patent but which are not attributed any functional significance therein**." Citing *Best Lock Corp. v. Schlage Lock Co.,* 413 F.2d 1195 (C.C.P.A. 1969). – *In re Howard Light Industries,* 80 USPQ2d 1507, at 1511.

Professor McCarthy's observations from *In re Howard Light* and *Best Lock* are

precisely the issue in our case.  The TTAB made a cursory review of the Birmingham Utility

Patent, noticed that the triangular shape of Softhands® was mentioned several times, but failed

to discern that there was no specific innovation or function attributed to the shape, other than it

covers the hand and stops the ball, which a multitude of shapes can do equally well.

For the foregoing reasons, the TTAB ruling cancelling the Design Mark on summary

judgment must be reversed.

### VI.   EVEN IF THE DESIGN MARK CANCELLATION IS UPHELD, PLAINTIFFS RETAIN VALID CAUSES OF ACTION AGAINST RAWLINGS UNDER SECTION 43(a) OF THE LANHAM ACT

Even if this Court were to uphold the ruling of the TTAB to cancel the Design Mark,

Plaintiffs still retain a valid cause of action under the Lanham Act for false designation of origin

and dilution of trade dress under Section 43 (a).  15 U.S.C. § 1125(a):  "Section 43(a) even

applies to unregistered trademarks and 'prohibits a broader range of practices than does § 32,

which applies to registered marks.'" *Hubbell Inc. v. Leviton Manufacturing Co., Inc,* 1997 WL

1068671 (E.D.N.Y.) at * 2, citing *Two Pesos v. Taco Cabana*, 505 U.S. 763 (1992), quoting

*Inwood Labs, supra.* The *Hubbell* court continues: "Protection of trade dress serves the Lanham

Act's purpose to secure to the owner of the mark the goodwill of his business and to protect the

**ability of consumers to distinguish among competing producers**." *Hubbell*, at *2, citing

*Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.* 469 U.S. 189, 198 (1985).

   In *Hubbell*, defendant copied from a well-known manufacturer the color, shape and

dimensions of a line of electrical parts and connectors, as well as plaintiff's part numbering and

identification system.  These elements (color, shape, dimensions and identification system for

parts) were identified in an expired utility patent of Plaintiff, and Defendant argued that the

utility patent precluded Plaintiff obtaining trade dress protection for these elements as a matter of

law, under the *Sears / Compco / Bonito Boats* line of cases.  *Hubbell*, at * 3-4, citing *Sears*

*Roebuck & Co. v. Stiffel Co.*, 376 U.S. 661 (1964) *and Bonito Boats, Inc. v. Thunder Craft Boats,*

*Inc.*, 489 U.S. 141, 157 (1989).

   The *Hubbell* court, quoting from *Bonito Boats*, disagreed:  "[A]s the Supreme Court has

explained: 'The *Sears* Court made it plain that the States 'may protect businesses in the use of

their trademarks, labels or distinctive dress in the packaging of goods so as to prevent others, by

imitating such markings, from misleading purchasers as to the source of the goods.'" – *Hubbell*,

at * 4, quoting *Bonito Boats,* 489 U.S. at 154, in turn quoting *Sears*, 376 U.S. at 232.

   Thus, Plaintiffs in our action, even in the event of this Court upholding the cancellation

of the Design Mark, retain valid causes of action against Rawlings under Section 43(a) of the

Lanham Act for false designation of origin and dilution of its distinctive trade dress, and such

claims may also proceed under relevant state law without regard to concerns of federal pre-

emption.

Turning first to a cause of action under the Lanham Act § 43(a) for trade dress infringement, to succeed, a plaintiff must establish that (1) its trade dress is distinctive as to source of product, (2) the infringing product creates a likelihood of confusion, and (3) its trade dress is not functional. See *Keystone Manufacturing Co., Inc. v. Jaccard Corp.* 2007 WL 655758 (W.D.N.Y.) at *1, citing *Fibermark, Inc. v. Brownville Specialty Paper Prods., Inc.* 2005 WL 1173562, at * 3 (N.D.N.Y. 2005) , *Landscape Forms, Inc. v. Columbia Cascade Co.,* 113 F.3d 373, 377 (2nd Cir. 1997), and 15 U.S.C. §1125 (a).

Applying the facts of our case to this test, the shape of the Softhands® product has acquired secondary meaning. Mr. Birmingham was required to make this showing in order to obtain the Design Mark originally. Consumer awareness of the product, and the association of its shape with the source of the goods, has been built up over 27 years of continuous sales in interstate commerce, advertising in literally millions of sporting goods product catalogs throughout that time period, endorsements by prominent baseball players and coaches, endorsement and use at camps and events by Little League International of Williamsport, PA, and through its broad availability at retail. See, e.g., Complaint at ¶ 43, and the affidavits referred to therein.

The Second Circuit has held that in assessing the inherent distinctiveness of a product's design, the relevant question for the court is "whether the design is likely to be understood as an indicator of the product's source." *P3 International v. Weitech, Inc.*, 1999 WL 1020249 (S.D.N.Y.) at * 2, citing *Samara Brothers, Inc. v. Wal-Mart Stores, Inc.,* 165 F.2d 120, 125 (2nd Cir. 1998). The focus of the inquiry is whether "the trade dress is of such a design that a buyer will immediately rely on it to differentiate the product from those of competing manufacturers." Id., citing *Knitwaves, Inc. v. Lollytogs, Ltd.* 71 F.3d 996, 1008 (2nd Cir. 1998) and *Tone Bros.,*

*Inc. v. Sysco Corp.* 28 F.3d 1192, 1206 (Fed. Cir. 1994). Such is the case with Softhands. See,

e.g., Hillson Affidavit, ¶¶ 7, 9; Caliendo Affidavit, ¶¶ 7, 9; Herrington Affidavit, ¶ 8, 10;

Hofman Affidavit, ¶¶ 8, 9 (e.g., "You know it's a Softhands® immediately by looking at it.");

Complaint – compare illustrations at ¶¶ 35-36 with photo of Softhands® at ¶ 4; and see also

Design Mark application file, Response to Office Action dated 3/22/2005, providing extensive

evidence of acquired distinctiveness of the Design Mark, (Complaint, Exhibit E).

Rawlings' product is a *precise duplicate* of the Softhands® product's dimensions and the

materials from which it is made. See Complaint at ¶ 4. Rawlings even uses a very similar name,

"Quick Hands," for its knock-off of the original, increasing the likelihood of confusion. See

Complaint at ¶ 48 for the proximity of the two products in commerce, and the likelihood of

confusion attributable to the use of strikingly similar product name and trade dress by Rawlings.

The third element of a trade dress infringement action under Lanham Act § 43(a) is

whether the trade dress is functional. Plaintiffs have demonstrated in Section IV of this

Memorandum of Law that under the *Inwood* formulation of the functionality test, first set forth in

*Morton-Norwich*, and as modified by *TrafFix,* the TTAB erred in cancelling the Design Mark for

being *de jure* functional. Thus, Plaintiffs retain a valid cause of action against Rawlings under

15 U.S.C. §1125 (a) for false designation of origin and dilution of trade dress, even if the Design

Mark is cancelled, since the protection afforded under Section 43(a) of the Lanham Act extends

beyond registered marks only, for the reasons stated in *Hubbell, Two Pesos* and *Inwood Labs*, as

discussed above.

## VII.   CAUSES OF ACTION UNDER THE COMMON LAW AND STATUTES OF NEW YORK

New York General Business Law (hereinafter, "NY GBL") § 360 is New York's state

trademark statute. Prior to filing for federal trademark protection, Plaintiff Mr. Birmingham

filed for trademark protection under NY GBL § 360 and was issued New York State trademark R24894 for Softhands[TM] in connection with the sale of the Softhands Company's sale of their infield training product.  The Softhands[TM] infield trainer retains the same shape and overall look as it did at the time the mark was registered with the State.  NY GBL § 360-L provides remedies for injury to business reputation or of dilution of the distinctive quality of a mark or trade name. As set forth in the Complaint, Plaintiffs have pled sufficient facts to constitute a cause of action under NY GBL § 360-L.  Remedies for injury to business reputation, unfair competition, and trademark dilution appear at NY GBL § 360-M, and other statutes described herein.

A party asserting a claim for unfair competition predicated upon trademark infringement or dilution in violation of NY GBL §§ 360-k and 360-l must show that the defendant's use of the trademark is likely to cause confusion or mistake about the source of the allegedly infringing product. *Beverage Marketing USA, Inc. v. South Beach Beverage Co., Inc.,* 20 A.D.3d 439, 799 N.Y.S.2d 242, (N.Y.A.D. 2d Dept., 2005).

In addition to remedies available to Plaintiff under NY GBL § 360, NY GBL § 133 prohibits an individual, firm or corporation from using a mark "with intent to deceive and mislead the public".  To state a cause of action under this statute sounding in either unfair competition or trademark infringement, the plaintiff must show that the public is likely to confuse the defendant's mark with that of the plaintiff.  *Spytown.com, Inc. v. Queens Spy Shop,* 29 Misc.3d 1205, 2010 WL 3835616, * 1.  *See also, Allied Maintenance Corp. v. Allied Mech. Trades,* 42 N.Y.2d 538, 399 N.Y.S.2d 628 (1977); and *Gasoline Heaven at Commack, Inc. v. Nesconsett Gas Heaven, Inc.,* 191 Misc.2d 646, 743 N.Y. S2d 825 (Sup.Ct. Suffolk County, 2002).

In addition to the protection afforded to business owners to protect their business reputation and identity by NY GBL §§ 360 and 133, New York also has an Anti-Dilution statute, NY GBL § 368-d, which states that the "likelihood of injury to business reputation or dilution of the distinctive quality of a mark or trade name shall be a ground for injunctive relief in cases of infringement or of a mark registered *or not registered*." Although there appears to be some overlap between GBL §§ 360 and 368, both provided statutory bases in support of the instant action.

Even in the absence of a trademark, under appropriate circumstances, New York statutory law can protect even an unregistered mark. *See, e.g., Gallina v. Giacalon,* 171 Misc.2d 645, 648, 655 N.Y.S.2d 317 (1997), at 319. (Case regarding the disputed use of the name of a singing group, which was not protected by a registered mark.)

Intentional business torts are actionable under New York common law. Restatement (Second) of Torts, § 766B lists the following elements to prove a claim for tortious interference with prospective business relations as "the intentional and improper interference with another's prospective contractual relation whether by inducing a third person not to enter the relation or preventing the other party from acquiring or continuing the relation." Here, Rawlings has intentionally manufactured, offered for sale and sold within the State of New York counterfeit copies of Mr. Birmingham's trademarked product, inducing consumers not to purchase an authentic Softhands™ because of Rawlings' ability to have their knock-offs manufactured in Asia for a fraction of the cost of the original item sold by Mr. Birmingham and his licensee, Pro Performance Sports.

Punitive damages are available in a tort action where the wrongdoing is intentional or deliberate, has circumstances of aggravation or outrage, has a fraudulent or evil motive, or is in

18

such *conscious disregard of the rights of another* that it is deemed willful and wanton (*See Prozeralik v. Capital Cities Communications, Inc.,* 82 N.Y.2d 466, 479, 605 N.Y.S.2d 218, 626 N.E.2d 34 (1993), citing Prosser and Keeton, Torts, § 2, at 9-10 [5th ed.], and *Swersky v. Dreyer and Traub*, 219 A.D.2d 321, 328, 643 N.Y.S.2d 33, 38 (N.Y.A.D. 1 Dept., 1996).

Rawlings has consciously disregarded both the federal and common law trademark and trade dress rights of Plaintiffs. Their manufacture of an identical duplicate of Mr. Birmingham's product was an intentional act done with the intent of capturing Mr. Birmingham's business, even though Rawlings *already sold a directly competitive product* that was made of leather, its "5 Tool Great Hands Training Glove".

In New York, punitive damages are not recoverable for actions such as ordinary breach of contract. Rather, their purpose is not to remedy private wrongs but to vindicate public rights. See, e.g., *Rocanova v. Equitable Life Assurance Society,* 83 NY.2d 603, 634 N.E.2d 940, 612 N.Y.S.2d 339 (1994), and *Garrity v. Lyle Stuart, Inc.* 40 N.Y.2d 354, 358, 386 N.Y.S.2d 831, 353 N.E.2d 793 (1976). "Thus, a private party seeking to recover punitive damages must not only demonstrate egregious tortious conduct by which he or she was aggrieved, but also that such conduct was part of a pattern of similar conduct directed at the public generally." *Rocanova, supra,* 83 NY.2d 603, 613.

Rawlings has evidenced such a pattern of egregious tortious conduct required for Mr. Birmingham to recover punitive damages, with a substantial history of trademark and patent infringement claims having been filed against both Rawlings and Jarden Corporation, its parent company, in the last 10 to 15 years, including the following cases:

> *Farrago v. Rawlings Sporting Goods Co., Inc.,* Not Reported in F.Supp.2d, 2008 WL 880178, E.D.Mo., March 31, 2008 (allegation of patent infringement);

*Matrix Group Ltd., Inc. v. Rawlings Sporting Goods Co.,*
477 F.3d 583, C.A.8 (Mo.), February 20, 2007 (NO. 05-4345, 06-1033) (breach of trademark
license agreement, tortious interference, unfair competition)

*Kempf v. Rawlings Sporting Goods Co., Inc.*
U.S. District Court – Middle District of Tennessee
Complaint filed July 15, 2011 – Docket No. 3:11-cv-00678 (patent infringement claim)

*Hos Development Corp. v. Rawlings Sporting Goods Co., Inc.*
Docket No. 3:01-cv-03369, Central District of Illinois, April 8, 2002 (trademark infringement
claim)

*Decker Sports, LLC v. Rawlings Sporting Goods Co., Inc.*
Docket No. P-99-285, Filed July 9, 1999
U.S. District Court, District of Nebraska (patent infringement claim)

*Everything Baseball v. Wilson Sporting Goods Co. et al (incl. Rawlings)*
611 F.Supp.2d 832, N.D.Ill., 2009  (patent infringement claim)

*Ripit Golf & Sports, et. al. v. Rawlings Sporting Goods Co., Inc.*
Docket No. 5:99-cv-00707, Northern District of Ohio, Dec. 20, 1999 (trademark infringement
claim)

*Ackerman v. Rawlings Sporting Goods Co., Inc.*
Docket No. 5:96-cv-01934 (Northern District of Ohio, June 10, 1997) (trademark infringement
claim)

*Sephra v. Jarden Corp.* (Rawlings' parent company)
Docket No. 3:096-cv-00836 (S.D. Calif., August 8, 2006) (patent infringement claim)

*Koncelik v. Jarden Corp.*
Docket No. 1:08-cv-00623 (N.D. Ill., October 22, 2009) (patent infringement claim)

Upon information and belief, several of these cases either settled out of court or the

claims were dismissed.  Copies of reported decisions have been provided for the foregoing where

they are available.

## VIII.   CONCLUSION

The Softhands[®] product is a foam pad with elastic finger slots that is used to teach

baseball players how to properly field ground balls, and develop the muscle memory to enable

the player to quickly transfer the ball from the glove hand to throwing hand in order to turn a

double play.  Plaintiffs have been selling the product continuously in interstate commerce for 27

years, and have secured a federally protected design trademark for the exterior shape of the product.

In originally securing the Design Mark, Plaintiffs were forced to demonstrate that the product shape had secondary meaning and signaled source of goods to consumers. In addition, they were forced to overcome objections of the trademark examiner that the product was not *de jure* functional. Plaintiffs succeeded on both counts and were awarded the Design Mark.

Now, due to Rawlings' unfair competition and petition to cancel the Design Mark, along with the misapplication of facts and law by the TTAB, the Design Mark faces cancellation, and Plaintiffs' business has suffered substantially as a direct result.

The triangular shape of Softhands® has no purpose in preventing the rapid rebound of a baseball from the pad. In fact, the only area necessary to the function of the product is the area immediately covering the palm of the wearer's hand. Excess padding extending outward from the palm is irrelevant and arbitrary, much like the shape of the container bottles in the *Morton-Norwich* case. The triangular shape of Softhands® is not shown to be superior to a square, oval, circular, rectangular, trapezoidal or any other shaped pad, either in the Utility Patent, or in commerce, where no other competitors have shown the commercial necessity to copy the distinctive shape of Softhands® in order to sell a competitive product.

In *Cartier, Inc. v. Samo's Sons, Inc.,* 2005 WL 2560382 (S.D.N.Y. 2005) at issue was the functionality of the design of the Tank Francaise wristwatch. The outer casing of the watch was square with rounded corners; its face featured roman numerals conforming to the angle-direction of the watch hands. *Cartier, Inc. v. Samo's Sons, Inc.,* 2005 WL 2560382 at *2; aff'd *Cartier, Inc. v. Sardell Jewelry, Inc.* 2008 WL 4206330 (2d Cir. 2008). The defendant's defense was that these elements were superior to other designs. The Court held that none of the distinctive

features of the Tank Francaise watch were essential to its function, nor did they render the watch cheaper or easier to manufacture. *Cartier, Inc. v. Samo's Sons, Inc.,* 2005 WL 2560382, at * 10, citing *Cartier, Inc. v. Four Star Jewelry Creations, Inc.*, 348 F.Supp.21d 217, 240 (S.D.N.Y. 2004) (holding that the watch design was purely ornamental and did not play a functional, essential or cost-saving role in the manufacture of these watches).

The facts in our case are analogous. The Softhands® triangular design with rounded edges is purely ornamental; its shape plays no "functional" role in its performance as a baseball fielding device. Much like the inner workings of a timepiece have no dependence on the shape of the watch's casing, the Softhands® product's function of permitting a player to trap a baseball in the heel area of the device is not dependent on the perimeter shape of the resilient foam material from which it is manufactured.

The foam may be cut into many different shapes fitting within a 12" x 12" "footprint" without affecting the cost or the difficulty of manufacturing a competing product. (Markam Affidavit, ¶¶ 4-7.) Hence, the Softhands® product's shape is *de jure* non-functional and its Design Mark may be protected under the Lanham Act. 15 U.S.C. § 1052 (e)(5). The ruling of the TTAB in the Cancellation proceeding should be reversed, the Design Mark reinstated as a valid trademark, and Plaintiffs' trademark infringement action against Rawlings permitted to proceed before this Court.

Respectfully submitted,

Dated:  September 23, 2011

By:  ___/s/  *Matthew Van Ryn*
Matthew Van Ryn, Esq.
Bar Roll No. 516272
217 S. Salina St., 7th Floor
Syracuse, NY  13202
Phone: (315) 422-1311
Fax:  (315) 479-7612

Attorneys for Plaintiffs
Peter Birmingham and Birmingham
Softhands Infield Trainer Co., Inc.